Filed 9/30/25 (depublication denied 1/14/26; reposted with Supreme Court order and statement)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BERKELEY PEOPLE'S ALLIANCE et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF BERKELEY et al.,<br><br>        Defendants and Respondents. | A172245<br><br>(Alameda County Super. Ct. No. 24CV064980) |

This is an action alleging violations of the Ralph M. Brown Act (the Brown Act; Gov. Code,[1] § 54950 et seq.) at three Berkeley city council meetings.  The trial court sustained defendants' demurrer without leave to amend for failure to state a cause of action.  At issue is the following exception to the Brown Act's open meeting requirements: "In the event that any meeting is willfully interrupted by a group or groups of persons so as to render the orderly conduct of such meeting unfeasible and order cannot be restored by the removal of individuals who are willfully interrupting the meeting, the members of the legislative body conducting the meeting may order the meeting room cleared and continue in session."  (§ 54957.9.) Plaintiffs contend that defendants failed to "order the meeting room cleared and continue in session" when defendants recessed meetings and reconvened

---

[1] All further statutory references are to the Government Code.

them in another room.  For the reasons explained herein, we find that plaintiffs alleged a claim for relief and reverse the judgment.

## BACKGROUND

Plaintiffs allege that defendants violated section 54957.9 during three city council meetings in late 2023 and early 2024.  At each meeting, the mayor determined that the city council was unable to conduct business due to disruption from the people attending the meeting.  The mayor stated that the level of the disruption and number of people meant that the city council was unable to restore order by removing the disruptive people.  The mayor did not order the meeting room cleared but instead recessed the meetings, which reconvened in a different room.  The press was permitted to attend the reconvened meetings in person, and the public was permitted to attend by video.  The room to which each of the meetings reconvened was too small to permit admittance of all nondisruptive members of the public in attendance at each meeting, and, in each instance, the city council did not return to the original meeting room.  There was no attempt at the meetings to restore order by removing the people who were interrupting the meeting, nor was the meeting room ordered cleared.

Seeking declaratory and injunctive relief, plaintiffs alleged that defendants violated the Brown Act by (1) not attempting to first remove the individuals who were interrupting the meetings before determining that order could not be restored, and (2) recessing the meetings and moving to a different room to continue the meetings rather than ordering the meeting room cleared and continuing in session in the original meeting room.  Regarding the second alleged violation, plaintiffs' complaint states that the Brown Act does not give the legislative body "the option of simply moving to a different meeting room as opposed to clearing the room and continuing in

session," and the Legislature did not provide that video meetings were adequate alternatives "to attending in-person, where members of the public may, among other things, strategize and coordinate, more readily yield time, make their presence felt, and more intimately view their elected officials so as to observe attentiveness and facial expressions among other things."

Defendants demurred, arguing that (1) section 54957.9 does not, on its face, require the city council to first attempt to remove individuals involved in the disturbance before determining that order cannot be restored and ordering the meeting room cleared, and (2) the city council effectively cleared the room and continued in session when it recessed the meetings and moved to another room.

The trial court sustained defendants' demurrer without leave to amend, finding that section 54957.9 does not require the city council to first attempt to remove the disruptive individuals before determining that order could not be restored by such removal, and the city council complied with the statute by recessing and reconvening the meeting sessions in a different room with the press. The court dismissed the action with prejudice, and plaintiffs timely appealed.[2]

## DISCUSSION

### The Brown Act

The Brown Act is intended to ensure the public's right to attend the meetings of public agencies. (*Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1511.) "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of

---

[2] We allowed the California Special Districts Association, California State Association of Counties, and League of California Cities to file an amici curiae brief in this appeal.

3

the legislative body of a local agency, except as otherwise provided in this chapter." (§ 54953, subd. (a).) "The Act thus serves to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation by public bodies." (*Golightly*, at p. 1511.)

The Brown Act governs regular and special meetings by legislative bodies.[3] (See §§ 54954, subd. (a), 54956.) A legislative body must post an agenda for a regular meeting at least 72 hours before the meeting with a brief general description of each item of business, including items for closed sessions.[4] (§ 54954.2, subd. (a)(1).) The agenda specifies the time and location of the regular meeting (including teleconference locations) and must be posted in a publicly accessible location and on the public agency's website if the agency has one. (§§ 54954.2, subd. (a)(1), 54952.2, subd. (a), 54953, subd. (b)(1).) The agenda gives the public a fair chance to participate in matters of particular or general concern (*San Diegans for Open Gov. v. City of Oceanside* (2016) 4 Cal.App.5th 637, 643), and a legislative body may not take action on, or discuss, any item not included on the agenda. (§ 54954.2, subd. (a)(3).)

Special meetings may be called by the presiding officer or a majority of the members of a legislative body by delivering 24 hours' written notice to each member of the legislative body and to each media outlet that has requested notice in writing, and by posting a notice on the local agency's web

---

[3] "Meeting" means "any congregation of a majority of the members of a legislative body at the same time and location, including teleconference location . . . , to hear, discuss, deliberate, or take action on any item" within the legislative body's subject matter jurisdiction. (§ 54952.2, subd. (a).)

[4] The Brown Act prohibits closed sessions except as expressly authorized by statute. (§ 54962.)

4

site, if applicable. (§ 54956, subd. (a).) The call and notice must specify the time and place of the special meeting and the business to be addressed; no other business may be considered. (*Ibid.*) The call and notice must be posted at least 24 hours prior to the special meeting in a publicly accessible location. (*Ibid.*)

A legislative body may, with less than a quorum, adjourn any regular, adjourned regular, special or adjourned special meeting to a time and place specified in the order of adjournment. (§ 54955.) "A copy of the order or notice of adjournment shall be conspicuously posted on or near the door of the place where the regular, adjourned regular, special or adjourned special meeting was held within 24 hours after the time of the adjournment." (*Ibid.*)

The Brown Act also contains provisions governing meetings in emergency situations. (§ 54956.5.) A legislative body may move a meeting in the event that it is unsafe to meet at the designated location as follows: "If, by reason of fire, flood, earthquake, or other emergency, it shall be unsafe to meet in the place designated, the meetings shall be held for the duration of the emergency at the place designated by the presiding officer of the legislative body or his or her designee in a notice to the local media that have requested notice pursuant to [s]ection 54956, by the most rapid means of communication available at the time." (§ 54954, subd. (e).)

Section 54957.9 provides an exception to the Brown Act's open meeting requirements. It provides, "In the event that any meeting is willfully interrupted by a group or groups of persons so as to render the orderly conduct of such meeting unfeasible and order cannot be restored by the removal of individuals who are willfully interrupting the meeting, the members of the legislative body conducting the meeting may order the meeting room cleared and continue in session. Only matters appearing on

5

the agenda may be considered in such a session. Representatives of the press or other news media, except those participating in the disturbance, shall be allowed to attend any session held pursuant to this section. Nothing in this section shall prohibit the legislative body from establishing a procedure for readmitting an individual or individuals not responsible for willfully disturbing the orderly conduct of the meeting." (§ 54957.9.)

### *Standard of Review*

"In determining whether plaintiffs properly stated a claim for relief, our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . ." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

The meaning of section 54957.9 is a question of law that we review de novo. (*Barber Group, Inc. v. New Motor Vehicle Bd.* (2023) 93 Cal.App.5th 1025, 1030.) "When interpreting a statute, courts must ' " 'determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and

public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " ' " (*Id.* at pp. 1032–1033.)

The Brown Act is construed liberally to accomplish its purpose, and statutory exceptions authorizing closed sessions of legislative bodies are construed narrowly. (*Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 180–181.) The California Constitution also requires meetings of public bodies and the writings of public officials and agencies to be open to the public. (Cal. Const. Art. I, § 3, subd. (b)(1).) In effectuating this right, "A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const. Art. I, § 3, subd. (b)(2).)

*Analysis*

Plaintiffs' primary argument on appeal is that they properly alleged a violation of section 54957.9 by alleging that defendants recessed the city council meetings at issue and reconvened them in a different room rather than ordering the original meeting room cleared. Defendants maintain that the statute does not state that a legislative body must clear the public from the meeting room, rather than clear itself from the room and continue the meeting in another room. We conclude that the plain language of the statute requires reversal of the judgment.[5]

---

[5] Plaintiffs alternatively argue that defendants violated the Brown Act by not attempting to remove the disruptive individuals before resorting to excluding the public from the meeting, but plaintiffs concede that we need not reach this issue if we agree with their primary claim on appeal. We accept plaintiffs' concession and do not address their alternative argument.

In the circumstances set forth by section 54957.9, a legislative body "may order the meeting room cleared and continue in session." Section 54957.9 does not define the phrase "order the meeting room cleared," so we may look to dictionary definitions to discern the common meaning of the language. (See *People v. Walker* (2024) 16 Cal.5th 1024, 1035.) "Cleared" or "clear" as an adjective means "having had objects . . . removed from it, especially when these were blocking something or causing a problem," "free from obstruction" or "emptied of contents or cargo." (Cambridge Dict. Online (2025) <https://dictionary.cambridge.org/us/dictionary/english/cleared>[as of September 30, 2025] [first definition]; Merriam-Webster's Dict. Online (2025) <https://www.merriam-webster.com/dictionary/clear> [as of September 30, 2025] [second and third definitions].) As a verb, "clear" means "to free from what obstructs or is unneeded" or "to empty of occupants." (Merriam-Webster's Dict. Online (2025) <https://www.merriam-webster.com/dictionary/clear> [as of September 30, 2025].) The statute's plain language thus allows members of a legislative body to command that the room in which the meeting is taking place be emptied of its occupants or freed from its obstructions. Recessing a meeting and reconvening it in another room is not ordering the meeting room be emptied of its occupants or obstructions.

Next, section 54957.9 does not provide that a legislative body may move the meeting location. The Brown Act requires that legislative bodies give prior public notice of the location of their meetings. (§§ 54954.2, subd. (a)(1), 54956, subd. (a).) Section 54957.9 states that a legislative body may "continue in session" after ordering the meeting room cleared (§ 54957.9), but it does not contain language authorizing the meeting's relocation. " 'In the construction of a statute . . . [we] simply . . . ascertain and declare what is in

8

terms or in substance contained therein, not . . . insert what has been omitted or omit what has been inserted . . . .' [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' " (*Service Employees Internat. Union, Local 1021, AFL-CIO v. County of Sonoma* (2014) 227 Cal.App.4th 1168, 1176.)

Even if we were to find the language of section 54957.9 ambiguous with respect to whether it authorizes a legislative body to recess and then relocate a meeting, several interpretive principles would lead us to reject defendants' construction.

First, "the Legislature does not engage in idle acts, and no part of its enactments should be rendered surplusage if a construction is available that avoids doing so." (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087.) If section 54957.9 were construed to allow a legislative body to recess a meeting and then move it to another location, an order that the meeting room be cleared — in other words, emptied of its occupants — would be an idle act.

Next, statutory language is to be understood in context, "with the whole of a statute considered when attempting to construe each part." (*Mendoza v. Nordstrom, Inc.*, *supra*, 2 Cal.5th at p. 1087.) Section 54957.9 requires that media representatives who did not participate in the disturbance be allowed to attend continued meeting sessions thereunder, but the statute contains no provisions governing giving notice of a new meeting location. A construction of the statute requiring that the meeting session remain in the originally announced location facilitates the media's participation and ability to report to the public about the meeting. And the California Constitution requires a strict construction consistent with the statute's plain language as opposed to a broad construction that could impede in-person media attendance and

9

public access to information concerning the conduct of the people's business by allowing a legislative body to move the meeting without specific requirements for giving notice of the relocation. (Cal. Const. Art. I, §3, subd. (b)(2).)

Defendants contend that we should ignore section 54957.9's plain language because it provides an exception "for dangerous situations" and literal interpretation "would frustrate the purposes of the Brown Act by encouraging physical removal of public attendees in tense situations." We are not persuaded. Section 54957.9 contemplates willful public interruption rendering "the orderly conduct of [the] meeting unfeasible," but it does not apply only in dangerous situations. Public interruption may certainly impede the conduct of a meeting without being dangerous, and where an emergency renders it unsafe to meet in an originally designated location, the Brown Act separately allows for the relocation of meetings. (§ 54954, subd. (e).)[6] Furthermore, recognizing that clearing the room may entail physical removal of the public does not frustrate section 54957.9's purpose when the statute's clear purpose is to authorize the removal of the public from a meeting room when the public obstructs the conduct of business. In interpreting statutes, "we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, ' " 'whatever may be thought of the wisdom,

---

[6] Amici curiae appear to concede that defendants did not clear the room within the meaning of section 54957.9 and suggest instead that defendants may have adjourned the meetings (§ 54955) or relocated them in a recognized emergency (§ 54954, subd. (e).) Defendants do not make these arguments, and we cannot assess whether they acted properly under those statutes because facts showing compliance with these provisions, including giving of the requisite notice, were not pleaded on the face of the complaint, which we liberally construe in favor of plaintiffs at this stage. (*Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1238.)

10

expediency, or policy of the act.' " ' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632.)

In sum, we find that (1) recessing a meeting and reconvening it in another room without members of the public who were attending the meeting is not ordering the original meeting room cleared; and (2) section 54957.9 does not itself authorize the relocation of a meeting. Plaintiffs' operative complaint states a claim for violation of section 54957.9 because, accepting their allegations as true at this stage, defendants did not order the meeting room cleared and instead recessed the meetings at issue and continued them in another room.

## DISPOSITION

The judgment is reversed.

BROWN, P. J.

WE CONCUR:

STREETER, J.
CLAY, J.[*]

*Berkeley City Alliance et al. v. City of Berkeley et al.*

---

[*] Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:     Alameda County Superior Court

Trial Judge:     Hon. Victoria Kolakowski

Counsel:     Law Office of Jonathan Weissglass, Jonathan Weissglass for Plaintiffs and Appellants.

Farimah Faiz, City Attorney, Brendan Darrow, Assistant City Attorney, Samuel Harvey, Stephen A. Hylas, Lauren S. Packard, Deputy City Attorneys for Defendants and Respondents.

Colantuono, Highsmith & Whatley, Michael G. Colantuono, Mihir A. Karode as Amicus Curiae on behalf of Defendants and Respondents.

Court of Appeal, First Appellate District, Division Four - No. A172245

**S294106**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

BERKELEY PEOPLE'S ALLIANCE et al., Plaintiffs and Appellants,

v.

CITY OF BERKELEY et al., Defendants and Respondents.

_____

The request for an order directing depublication of the opinion in the above-entitled matter is denied. The court declines to review this matter on its own motion. The matter is now final.

(See Concurring Statement by Justice Groban)

_____
/s/
*Chief Justice*

BERKELEY PEOPLE'S ALLIANCE v. CITY OF BERKELEY

S294106

Concurring Statement by Justice Groban

I agree with my colleagues that depublication of the Court of Appeal's decision in *Berkeley People's Alliance v. City of Berkeley* (2025) 114 Cal.App.5th 984 is unwarranted. I write separately, however, to voice my concerns that uncertainty regarding the meaning of certain provisions in the Ralph M. Brown Act (the Brown Act; Gov. Code, § 54950 et seq.)[1] leave legislative bodies in a difficult — and potentially dangerous — position when confronted with disruptive individuals who willfully interfere with the meeting of a public agency.

The Brown Act currently provides that in the event of a serious disruption by protestors during a public meeting, a legislative body is authorized to "order the . . . room cleared and continue in session. . . . Representatives of the press . . . shall be allowed to attend any session held pursuant to this section." (§ 54957.9.) The Court of Appeal held that this statutory language does not permit the legislative body to *move* the meeting to an adjacent room with the press present, which is what happened here.[2]

The City of Berkeley has not sought review as to whether the Court of Appeal properly interpreted section 54957.9.

[1] All further statutory citations are to the Government Code.

[2] The Court of Appeal also left open the question whether a different provision of the Brown Act, section 54954, subdivision

However, the California State Association of Counties, joined by the League of California Cities, urges us to depublish the case, arguing that "ordering that a meeting be relocated to a different room is the functional equivalent of clearing the original meeting room."  They further contend (as did the City of Berkeley in the proceedings below) that the Court of Appeal's contrary interpretation will force legislative bodies to choose between cancelling a meeting entirely or risk a physical altercation with disorderly members of the public.  While I express no definitive view on the merits of that question, I do not find the court's interpretation, which tracks the plain language of the statute, to be implausible or clearly wrong.  (See, e.g., *Heckart v. A-1 Self Storage, Inc.* (2018) 4 Cal.5th 749, 757 [" ' " 'the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent' " ' "].)  For those reasons, I agree with my colleagues that depublication is unwarranted.

I am, however, sympathetic to the concerns that the City of Berkeley and its amicus curiae have raised in these proceedings.  It seems entirely reasonable that a legislative body would have legitimate concerns that attempting to clear a room of unruly members of the public could create a dangerous situation for attendees and government officials alike.  Moreover, it is unclear what is to be gained by requiring the legislative body to remove (forcibly if necessary) the public from the original meeting room rather than allowing it to take the less confrontational approach of simply continuing the session in an adjacent room with the press present.  Compelling the

---

(e), allows for a change of meeting location when confronted with a serious disruption.

legislative body to physically remove every person from the room — including those engaged in disruptive behavior — seems more likely to force the body to choose instead to simply adjourn the meeting altogether, which is a resolution that serves no one.  So why not provide the legislative body with an option that avoids the specter of physical confrontation?   Those concerns seem particularly acute for smaller agencies that may lack the resources to safely clear the public from the original meeting room.

In sum, while I see no basis for depublishing the Court of Appeal's decision, I would encourage the Legislature to consider clarifying whether, when faced with a willful, widespread disruption, a legislative body's only option for carrying on the meeting is to order the public to be physically removed from the hearing.

**GROBAN, J.**